UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TERRANCE BROWN, <br><br> Plaintiff, <br><br> v. <br><br> SCOTT KRUEGER, *et al.,* <br><br> Defendants. | CAUSE NO. 2:23-CV-311-PPS-APR |

OPINION AND ORDER

Terrance Brown, a prisoner without a lawyer, filed a complaint. ECF 1. As required by 28 U.S.C. § 1915A, I must screen the complaint (ECF 1) and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Brown is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Brown alleges that evidence submitted during his federal criminal bench trial—one that I presided over—was improperly procured and/or analyzed, which "affected [his] right to a fair trial." ECF 1 at 3. Specifically, he takes issue with data "extracted"

from cell phones that allegedly "did NOT come from the phones in which were relevant in the case." ECF 1 at 2. He claims the "agency that dumped the phone, the agency in which it was delivered for service and upon completion with the hard drive . . . was planted in the discovery or maybe the trial exhibit from the AUSA is completely bogus." *Id*. He alleges Indiana State Police Sgt. Scott Krueger was the one who "dumped" the phones before he gave them to Special Agent Andrew Chonowski who tendered it to the government during discovery prior to trial. He has sued Sgt. Krueger, Agent Chonowski, Assistant United States Attorney Caitlin Padula, and Former Assistant United States Attorney Thomas Mahoney (the AUSAs) for punitive damages and injunctive relief in the form of having the phones "extracted again to challenge the validation of the evidence and then to notify the criminal court of this matter . . . [to] help remove my conviction." *Id*. at 8.

Before delving into the merits of Brown's allegations, I feel some relevant background information, not provided by Brown in his complaint, is necessary.[1] In *United States v. Brown*, cause no. 2:20-CR-148-PPS-JPK (filed Sept. 22, 2020), Brown was tried and convicted of bank robbery in violation of 18 U.S.C. 2113(a). Prior to trial, Brown's attorney submitted a Motion in Limine that sought to prevent the government from "presenting evidence regarding internet searches on any cellular telephone

---

[1] I'm permitted to take judicial notice of public documents in screening the complaint. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018); *Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."). In this instance it happens to be a separate case presided over by me, but the general principle still applies, as the relevant information is available on the public docket.

searched in this case, including but not limited to, internet searches related to bank robbery, that is not contemporaneous to September 18, 2020." *See United States v. Brown*, cause no. 2:20-CR-148-PPS-JPK (filed Sept. 22, 2020), ECF 53 at 2. I ultimately overruled Brown's objection because the government presented evidence of a connection between Brown and the cell phones—they were found on his person—and because the internet searches made on the cell phones both before and immediately after the robbery were "probative either of evidence of planning to commit a robbery, and even for those searches that are done after the fact to suggest a consciousness of guilt . . .." *See id.*, ECF 100 at 52–53. Thus, the data extracted from the cell phones was admitted into evidence and considered in determining whether Brown was, in fact, guilty of the robbery.[2]

As an initial matter, to the extent Brown is seeking to challenge the fact or duration of his underlying criminal conviction, he may not do so via a federal civil rights action. *See, e.g., Day v. Watson*, 798 F. App'x 27, 29 (7th Cir. 2020) (citing *Heck v. Humphrey*, 512 U.S. 477, 484–87 (1994) and noting that the exclusive remedy for such challenges is a collateral attack under 28 U.S.C. §§ 2241 or 2255); *see also Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (extending *Heck* to actions brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)).

---

[2] During the bench trial, the validity of the data extraction, the registration of the cell phones that were found on Brown's person, and the related chain of custody issues were all litigated. *See Transcript of Bench Trial - Volume 2,* available at *United States v. Brown,* cause no. 2:20-CV148-PPS-JPK (filed Sept. 22, 2020), ECF 100 at 36–54, 70–78, 80–93, 100–108.

3

His claims for monetary damages are similarly unavailing. It's obvious Brown takes issue with the data Sgt. Krueger extracted from the cell phones, but it's unclear from his complaint whether he believes the data was intentionally manipulated, whether he believes Sgt. Krueger extracted the data in a negligent manner, or whether he's claiming the data came from someone else's cell phone entirely. Even assuming he could state a plausible § 1983 claim against Sgt. Krueger based on one of those scenarios, it would be barred because crediting those allegations would necessarily imply the invalidity of his conviction. *Heck*, 512 U.S. at 486-87. Such a claim cannot be brought unless and until his conviction is "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.*; *see also Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995) (*Heck* bars § 1983 action alleging conspiracy to procure conviction through perjury, falsifying evidence, and withholding exculpatory evidence). There is no indication that has occurred; instead, the conviction and sentence were recently affirmed by the Seventh Circuit. *See United States v. Brown*, 74 F.4th 527, 533 (7th Cir. 2023), *reh'g denied*, No. 22-1192, 2023 WL 5396070 (7th Cir. Aug. 22, 2023). Therefore, the claims against Sgt. Krueger must be dismissed without prejudice. *Polzin v. Gage*, 636 F.3d 834, 839 (7th Cir. 2011).

Brown's claims against the federal defendants must be dismissed as well. He alleges Agent Chonowski received the cell phone data/analytical report from Sgt. Krueger and subsequently gave it to AUSAs Padula and Mahoney to present as evidence during trial. He claims the evidence was "planted in the discovery" (but he

4

doesn't say by whom) or "maybe the trial exhibit from the AUSA is completely bogus" (but he doesn't explain why). ECF 1 at 2. Even if I construe these vague allegations broadly in his favor, there is a question as to whether they could support a *Bivens* action. *Compare, Engel v. Buchan*, 710 F.3d 698, 702 (7th Cir. 2013) (citing *Hammond v. Kunard*, 148 F.3d 692, 694–95 (7th Cir. 1998) (*Bivens* cause of action entertained where plaintiff alleged law enforcement officers created false evidence to be used at trial)) *with*, *Petrunak v. Krofta*, 858 F. App'x 922, 924 (7th Cir. 2021) (noting that there "is some question about whether [the plaintiff's conspiracy claims regarding the false testimony of ATF agents during trial] are cognizable under *Bivens*" but declining to decide the issue because the complaint didn't state any plausible claims for relief on the merits).[3] Likewise, I needn't decide the issue because any *Bivens* claims would need to be dismissed for additional reasons. As to the AUSAs, "[p]rosecutors enjoy absolute immunity from federal tort liability, including *Bivens* liability, for their work as prosecutors." *Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 565 (7th Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)). Here, Brown alleges only

---

[3] In *Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 561–63 (7th Cir. 2022), the court recognized that while *Bivens* clearly covers allegations of Fourth Amendment violations in the form of a warrantless search, the Supreme Court's holding in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) narrowed the application of *Bivens* and cautioned against expanding it to new contexts. The court further noted that circuit courts were split post-*Abbasi* as to whether allegations that the defendant(s) obtained a warrant using fabricated or misleading testimony/evidence fell within the existing sphere of *Bivens* or whether those allegations arose in a new context. *Pettigrew*, 38 F.4th at 562–64. The Seventh Circuit ultimately determined that the plaintiff's allegations were "the sort of Fourth Amendment violation familiar to federal courts and close to the heart of *Bivens*[,]" so "the line of cases recognizing Fourth Amendment *Bivens* claims based on fabricated warrant affidavits and/or grand jury testimony" remains viable. *Id*. at 564. The district court's decision was also affirmed on alternate grounds—that the AUSA was entitled to absolute immunity and the FBI Agent was entitled to qualified immunity. *Id*. at 565–69. In this case, Brown doesn't allege that the cell phone data was obtained without a warrant or even with a warrant that included fabricated or misleading testimony. He simply asserts that the evidence obtained and presented at trial was somehow flawed.

that they received the cell phone data from Agent Chonowski and subsequently decided to use it during trial. These allegations don't suggest the AUSAs did anything more than evaluate the evidence that had already been gathered by Sgt. Krueger and Agent Chonowski, so they are immune from suit. *See Pettigrew*, 38 F.4th at 565–67 (AUSA who was allegedly involved in reviewing and drafting a falsified search warrant was entitled to absolute immunity because a "prosecutor's advocacy responsibilities include evaluating the evidence assembled by officers"); *Lewis v. Mills*, 677 F.3d 324, 331–32 (7th Cir. 2012) (finding prosecutor was absolutely immune for allegedly fabricating evidence because he didn't play a meaningful part in the initial investigation and his role was simply that of an advocate).

Similarly, with regard to Agent Chonowski, "[q]ualified immunity provides a shield from individual liability for officers 'if a reasonable officer could have believed that the action taken was lawful, in light of clearly established law and the information the officer possessed at the time.'" *Pettigrew*, 38 F.4th at 567 (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 527–28 (7th Cir. 2012)). Brown alleges that the cell phone data was "planted" in the discovery materials, but he doesn't state by whom. Even assuming Agent Chonowski was responsible for submitting the allegedly false or improper cell phone data extracted by Sgt. Krueger to the AUSAs, Brown hasn't alleged any facts to suggest Agent Chonowski knowingly or intentionally included false or incorrect information in that submission; instead, Brown simply alleges he took the "bad" data provided by Sgt. Krueger and passed it along. Of note, the cell phone data was *not* used or addressed in the probable cause statement of the criminal complaint, and probable

6

cause for his arrest was established without it. *See United States v. Brown*, cause no. 2:20-CR-148-PPS-JPK (filed Sept. 22, 2020), ECF 1. Thus, even if Brown had alleged a viable *Bivens* claim against Agent Chonowski, based on the facts available in the record, he would be entitled to qualified immunity. *See Pettigrew*, 38 F.4th at 567–69 (FBI agent was entitled to qualified immunity despite the plaintiff's allegation he had submitted false or misleading facts in the probable cause affidavit because the other allegations were enough to allow a reasonable agent to believe they amounted to probable cause).

Finally, to the extent any claims for some sort of conspiracy between the defendants can be teased out of Brown's sparse allegations, they are barred by *Heck* and must be dismissed. *See, e.g., Petrunak*, 858 F. App'x at 924 (plaintiff's allegations that federal ATF agents conspired to lie at his criminal trial which resulted in his conviction could not proceed because that conviction had not been overturned); *cf. Mockbee v. Lee*, No. 20-2004, 2021 WL 5918556, at *1 (7th Cir. Dec. 15, 2021) (claim that state prosecutors, the judge, and the court reporter conspired to violate the plaintiff's constitutional rights by tampering with the evidence and the docket were barred by *Heck*).

"Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Machine*, 191 F.3d 790, 794 (7th Cir. 1999) (citations omitted); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024-25 (7th Cir. 2013). However, "that does not mean it must always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). "[C]ourts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Id.* (citation omitted). I've

7

considered the fact that "[t]he favorable-termination rule [in *Heck*] is more than a procedural hurdle that plaintiffs can skirt with artful complaint drafting . . . . Rather, it is grounded in substantive concerns about allowing conflicting judgments." *Morgan v. Schott*, 914 F.3d 1115, 1120 (7th Cir. 2019). And, I find no basis to conclude that if given another opportunity, Brown could assert plausible claims—consistent with those he has already made under penalty of perjury—related to his outstanding criminal conviction that would not ne barred by *Heck* or could present viable *Bivens* claims as to the federal defendants that would survive immunity issues.

For these reasons, this action is DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915A.

SO ORDERED.

ENTERED: September 27, 2023.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT